UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| CEDRIC GARY, individually and on behalf of all others similarly situated | * * * |
| Plaintiff, | * * |
| | * CASE NO. 4:20-cv-1640 |
| versus | * * |
| | * |
| HALLMARK SHELL, LLC and TY HALLMARK | * * |
| | * COLLECTIVE ACTION |
| Defendants. | * * |

# COMPLAINT – COLLECTIVE ACTION

Plaintiff Cedric Gary, individually and on behalf of all other similarly situated current and former employees of Defendants, brings this Collective Action against Defendants, Hallmark Shell, LLC and Ty Hallmark (hereinafter collectively referred to as "Defendants"), and alleges as follows:

## I. OVERVIEW

1. Plaintiff brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* to recover unpaid overtime compensation under §16(b) of the FLSA. He brings these claims as a collective action on behalf of himself and all current or former landscape workers employed by Defendants during the last three (3) years, who were not paid overtime for all hours worked in excess of forty (40) hours a week as required by § 207(a) of the FLSA (hereinafter referred to as "Collective Members").

## II. JURISDICTION AND VENUE

2. This Court has federal question jurisdiction under 28. U.S.C. §1331 as this case is brought pursuant to the FLSA, 29 U.S.C. §201, *et seq.*

3. Venue is proper in this District under 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to the claims at issue in this case occurred in this district.

4. Furthermore, Defendants' principal office is located in this district.

### III.    PARTIES

**Plaintiff**

5. Plaintiff, Cedric Gary, is a major individual domiciled in Jefferson County, Texas, and has been employed by Defendants from approximately late 2017 or early 2018 through the present as a landscape worker providing landscape, lawn maintenance, and irrigation services to Defendants' clients.

6. Plaintiff has consented to filing the instant action. (Exhibit "A").

**Defendants**

7. Together, Defendants have employed Plaintiff and those similarly situated as a single enterprise and participated in employment decisions regarding the rights for which Plaintiff and those similarly situated seek redress in this case.

**Hallmark Shell, LLC**

8. Defendant Hallmark Shell, LLC (hereinafter referred to as "Hallmark Shell") is a Texas domestic limited liability company with its principal place of business located at 198 W. Circuit Drive, Beaumont, TX 77706 and may be served through its registered agent, Ty Hallmark at that same address.

9. Hallmark Shell does business under the name Hallmark Lawn & Landscape.

10. Hallmark Shell provides residential, commercial, and industrial landscape, lawn maintenance, and irrigation services to Defendants' clients.[1]

---

[1] https://business.facebook.com/lawnsbyhallmark/. (Last visited June 12, 2020).

11. At all relevant times, Hallmark Shell maintained control, oversight, and direction over Plaintiff and those similarly situated, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

**Ty Hallmark**

12. Defendant Ty Hallmark (hereinafter referred to as "Hallmark") is a major individual domiciled at 198 W. Circuit Drive, Beaumont, TX 77706. He may be served at that address or wherever he may be found.

13. Defendant Hallmark is the owner and operator of Hallmark Shell.

14. At all relevant times, Defendant Hallmark has been actively involved in managing the operations of Hallmark Shell.

15. At all relevant times, Defendant Hallmark has had control over Hallmark Shell's pay policies and the unlawful policies and practices alleged herein.

16. Defendant Hallmark had authority over personnel and payroll decisions at Hallmark Shell.

17. Defendant Hallmark had the authority to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

18. Defendant Hallmark had the authority to enter into contracts on behalf of Hallmark Shell.

19. Defendant Hallmark has had the power to transfer the assets and liabilities of Hallmark Shell.

20. Defendant Hallmark has had the power to declare bankruptcy on behalf of Hallmark Shell.

21. Defendant Hallmark has had the power to close, shut down, and/or sell Hallmark Shell.

### IV.   COLLECTIVE ACTION DEFINITION

22. The Collective of similarly situated employees sought to be certified under 29 U.S.C. §216(b) as a collective action is defined as:

> All current and former landscape workers employed by Hallmark Shell, LLC and/or Ty Hallmark, who were not paid overtime wages for all hours worked over forty (40) in a workweek within the last three (3) years.

### V.   COVERAGE UNDER THE FLSA

23. At all times hereinafter mentioned, Defendants are and have been an employer within the meaning of 29 U.S.C. §203(d).

24. At all times hereinafter mentioned, Defendants are and have been an enterprise within the meaning of 29 U.S.C. §203(r).

25. At all pertinent times, Defendants have been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. §203(s)(1).

26. Upon information and belief, Defendants have had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

27. At all times hereinafter mentioned, Plaintiff, and all those similarly situated, were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207.

## VI.    FACTS

28.     Plaintiff and the Collective Members were employed by Defendants as landscape workers who provided landscape, lawn maintenance, and irrigation services for Defendants' clients.

29.     Plaintiff's hours varied from week to week during his employment with Defendants, but he regularly worked more than forty (40) hours in a workweek.

30.     Upon information and belief, the Collective Members were also regularly scheduled to and did work more than forty (40) hours in a workweek.

31.     Defendants paid straight time for all hours worked and failed to pay an overtime premium for all hours worked over forty (40) in a workweek.

32.     For instance, during the workweek of June 5, 2020 to June 11, 2020, Plaintiff worked forty-four and eighty-five hundredths (44.85) hours. He was paid straight time for all hours worked and was not paid an overtime premium for the four and eighty-five hundredths (4.85) hours worked in excess of forty (40) during that workweek.

33.     Neither Plaintiff nor the Collective Members were compensated in accordance with the FLSA because they were not paid overtime wages for all hours worked, in excess of forty (40) hours in a workweek for all weeks worked.

34.     Plaintiff is aware of other current and former employees of Defendants who were subject to the same payroll practice.

35.     Pursuant to the FLSA, 29 U.S.C. §207, employers are generally required to pay overtime compensation at an hourly rate of 150% of an employee's regular rate of pay for hours worked over forty (40) in a workweek.

36. Defendants have violated, and are violating, the provisions of Section 7 of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by not paying its landscape workers, like Plaintiff and the Collective Members, overtime.

37. Defendants knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of failing to pay Plaintiff and the Collective Members overtime compensation for all hours worked over forty (40) by failing to pay in the past three (3) years.

38. Plaintiff was misclassified by Defendants as an independent contractor when, in fact, he was an employee.

39. Defendants required Plaintiff and the Collective Members to sign 1099 forms.

40. Plaintiff was granted minimal discretion or independent judgment in the method and manner that his work was performed. Instead, many aspects of Plaintiff's job duties as a landscape worker were controlled by Defendants.

41. Plaintiff was not free to set his own schedule. Rather, Defendants determined the time Plaintiff was required to Defendants' shop each morning to pick up his company vehicle. Defendants required Plaintiff and the Collective Members to work until all assigned jobs for each day were completed.

42. Defendants threatened to cut the pay of Plaintiff and Collective Members if they showed up late according to the schedule set by Defendants.

43. Defendants' assigned which jobs Plaintiff and the Collective Members would complete.

44. Plaintiff was regularly required to perform his job under the supervision of a Hallmark Shell foreman.

45. Plaintiff was required to wear company t-shirts and hats while performing work for Defendants.

46. Plaintiff used Defendants' equipment to perform landscape, lawn maintenance, and irrigation services for Defendants' clients, such as Lexmark lawn mowers, Kubota tractors, Stihl weed-eaters, backpack blowers, rakes, and shovels. Plaintiff did not use any of his own equipment.

47. Plaintiff used supplies provided by Defendants to complete assigned projects for Defendants' clients, such as PVC pipe, pipe glue and primer, sprinkler heads and nozzles, dirt, and drain pipe. Plaintiff did not utilize any of his own supplies to complete assigned projects.

48. Plaintiff drove Defendants' company vehicles to his assigned worksites.

49. Plaintiff has worked for Defendants in the same role for over two years, and therefore his job is a permanent position.

50. Defendants informed Plaintiff and the Collective Members that Defendants did not want Plaintiff and the Collective Members to work second jobs.

51. Some of Defendants' clients would attempt to hire Plaintiff and Collective Members to perform one-time side jobs, separate from the services that were being provided by Defendants. Defendants informed Plaintiff and the Collective Members that accepting such side jobs would put their positions with Defendants in jeopardy.

52. The determining factor as to whether Plaintiff was an employee or independent contractor under the FLSA cannot be regulated by any contract or by the Agreements. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See, Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic

reality, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

53. Courts generally utilize the following factors to determine economic dependence and employment status:

    a. The degree of control exercised by the alleged employer;

    b. The relative investment of the alleged employer and employee;

    c. The degree to which the employee's opportunity for profit and loss is determined by the employer;

    d. The skill and initiative required in performing the job;

    e. The permanency of the relationship; and

    f. The degree to which the alleged employee's tasks are integral to the employer's business.

54. Applying the economic reality test, Plaintiff has established economic dependence on Defendants and that he was an employee and not an independent contractor.

55. Plaintiff was not in business for himself and truly independent, but rather was economically dependent upon employment with Defendants.

56. Plaintiff was not engaged in an occupation or business distinct from that of Defendants. To the contrary, Plaintiff was the basis for Defendants' business of providing landscape, lawn maintenance, and irrigation services for Defendants' clients, and thus, constitutes an integral part thereof.

57. Defendants retained complete and total control over the activities of Plaintiff and regulated all aspects of the job.

58. Plaintiff's economic status was inextricably linked to conditions over which Defendants had complete control, including, but not limited to, the assignment and scheduled hours of work shifts, which clients he was assigned to, which tools and equipment he would use to complete assigned projects, the manner in which he was expected to complete assigned projects, and the time in which he was expected to complete assigned projects.

59. Plaintiff had no control over which of Defendants' clients he would work for, nor did he participate in any efforts to increase Defendants' client base.

60. Plaintiff's financial investment is minor compared to the investment made by Defendants in the business at hand. All capital and risk belong to Defendants. Absent Defendants' investment in the provision of clients for their landscape, lawn maintenance, and irrigation services that Plaintiff performed, no money would be earned.

61. The job of Plaintiff as a landscape worker is an integral part of Defendants' business providing landscape, lawn maintenance, and irrigation services and are critical to Defendants' success.

## VII.   COLLECTIVE ACTION ALLEGATIONS

62. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

63. Defendants' practice and policy of not paying overtime affects Plaintiff and the Collective Members and is a willful violation of the FLSA.

64. The Collective Members are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiff in terms of job duties, pay and employment practices.

65. Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiff and the Collective Members are similarly situated employees.

66. The specific job titles or precise job requirements of the Collective Members does not prevent collective treatment. All employees, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek at the overtime rate. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

67. The precise size and the identity of the Collective should be ascertainable from the business records, payroll and/or employee or personnel records of Defendants.

## VIII.   JOINT EMPLOYER ALLEGATIONS

68. At all times pertinent hereto, specifically including the Collective period, Defendant Hallmark was an owner, manager and/or executive officer of Hallmark Shell.

69. Defendant Hallmark exercised supervisory and managerial responsibilities and substantial control over the terms and conditions of Plaintiff and the Collective Members' work including, but not limited to, assigning work, hiring and firing employees.

70. Further, Defendant Hallmark is or was solely and jointly responsible for the administration of the business affairs of Hallmark Shell and exercised complete control over the work situation and conditions of its employees.

71. Defendant Hallmark is jointly and solely responsible for the payroll practices of Hallmark Shell including, but not limited to, the payroll practices complained of herein.

72. Defendant Hallmark was vested with authority to, and actually acted directly or indirectly for, and had operational control over Hallmark Shell's business activities including managerial responsibilities for all aspects of operations and its employees.

73. Accordingly, Defendant Hallmark is an "employer" under the FLSA and, as such, is jointly and severally liable for damages for his failure to comply with the FLSA including all damages claimed herein.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment in his favor and against Defendants as follows:

1. For an Order recognizing this proceeding as a collective action under §216(b) of the FLSA and ordering notice to the Collective Members at the earliest opportunity to ensure Collective Members' claims are not lost to the FLSA statute of limitations;

2. For an Order finding Defendants liable for unpaid back wages due to Plaintiff and the Collective Members and for liquidated damages equal in amount to the unpaid compensation;

3. For an award of costs of this action as provided under the FLSA;

4. For an award of attorneys' fees as provided under the FLSA;

5. For an award of pre- and post-judgment interest; and

6. For any and all other and further relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully Submitted:

By: /s/ Philip Bohrer
    Philip Bohrer    (Texas Bar #00792194)
    *phil@bohrerbrady.com*
    Scott E. Brady
    *scott@bohrerbrady.com*
    Amanda E. McGowen
    *amcgowen@bohrerbrady.com*
    **BOHRER BRADY, LLC**
    8712 Jefferson Highway, Suite B
    Baton Rouge, Louisiana   70809
    Telephone: (225) 925-5297
    Facsimile: (225) 231-7000